UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CARLOS ESPINOZA,<br><br>Plaintiff,<br><br>vs.<br><br>JEDIDIAH FOWLER,<br><br>Defendant. | 4:22-CV-04068-RAL<br><br>OPINION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES |

Plaintiff Carlos Espinoza, a resident of North Carolina, sued Defendant Jedidiah Fowler, a Minnesota resident, for injuries sustained in a motor vehicle accident that occurred in South Dakota, invoking diversity of citizenship jurisdiction, and claiming damages exceeding $75,000. Doc. 1. Alleging that Fowler was drunk when his negligent and reckless acts caused the accident, Espinoza plead a claim for punitive damages. Doc. 1 at 3–4. Fowler has filed a Motion for Partial Summary Judgment Regarding Punitive Damages, Doc. 10, which Espinoza opposes, Docs. 14, 15, 16.

I. **Undisputed Material Facts and Facts Viewed in Plaintiff's Favor**

The motor vehicle accident at issue occurred around 10:40 p.m. on October 28, 2022, at an intersection in Watertown, South Dakota. Doc. 12-1 at 2. Defendant Fowler was driving a Chevrolet Silverado eastbound on 4th Avenue Southeast, while Plaintiff Espinoza was driving a Nissan Altima northbound on 11th Street Southeast. Id. at 2–4. Fowler had a stop sign at the intersection of 4th Avenue and 11th Street; Espinoza did not. Id. at 4. Fowler apparently was

1

traveling about 10 miles per hour and Espinoza was traveling about 25 miles per hour when the cars collided. Doc. 11 at ¶ 2; Doc. 16 at ¶ 2. Fowler caused the accident by entering an intersection where a stop sign controlled his travel and not yielding to Espinoza's vehicle which had the right of way.

Fowler's blood alcohol content as measured by a PBT on site was .126%, above the legal limit of .08% set by South Dakota law. Doc. 11 at ¶ 4; Doc. 16 at ¶ 4; Doc. 14-17. The responding police officer cited Fowler, who was 19 years old at the time, for driving under the influence 1st, underage purchase or possession of alcoholic beverages, and a stop sign violation for not yielding the right of way. Doc. 12-1 at 4; Doc. 11 at ¶¶ 3, 5; Doc. 16 at ¶¶ 3, 5. Fowler ultimately was convicted of reckless driving and received a suspended imposition of sentence. Doc. 11 at ¶ 6; Doc. 16 at ¶ 6.

Fowler testified that on the night of the accident, he had been at a restaurant for all-you-can-eat wings with some friends. Doc. 11 at ¶ 9; Doc. 16 at ¶ 9. He did not drink alcohol at the restaurant. Doc. 11 at ¶ 10; Doc. 16 at ¶ 10. After leaving the restaurant, Fowler went to a friend's house and drank "three or four" 12-ounce cans of Coors Light and had some sips of a friend's mixed drink. Doc. 11 at ¶ 11; Doc. 16 at ¶ 11. Fowler consumed these drinks over a span of 60 to 90 minutes. Doc. 14-6 at 1–3. Fowler testified that he weighed 215 pounds at the time and did not feel impaired until after the collision. Doc. 11 at ¶¶ 12–13; Doc. 16 at ¶¶ 12–13; Doc. 14-10 at 1–2.

Fowler lived south of where he had been drinking but chose to drive through Watertown, adding approximately 10 minutes to his drive home. Docs. 14-8; 14-9. Fowler acknowledged that by doing so he would endanger more people on that route. Doc. 14-11. Fowler's first words to Espinoza after the collision were to ask if Espinoza had been drinking too. Doc. 14-12.

Fowler knew that intoxication impairs a person's ability to function and slows reaction time. Doc. 14-3. While in high school, Fowler attended a program the local sheriff's office conducted about the dangers of drunk driving, including participating in an exercise where he wore special goggles that simulated the effects of being impaired. Docs. 14-4; 14-5. Fowler testified that he had "driven with a buzz" before the accident "maybe once." Doc. 11 at ¶ 14; Doc. 16 at ¶ 14. After the accident, Fowler says that if he has more than three beers, he will not drive home because for someone his size it would be "borderline .08." Doc. 11 at ¶ 15; Doc. 16 at ¶ 15. Fowler has not been involved in any other alcohol-related car accidents. Doc. 11 at ¶ 18; Doc. 16 at ¶ 18. Fowler, however, gave conflicting testimony when asked if he had driven after the accident with a buzz, initially answering "no" and then when immediately asked "Never?" responding "Yep, once. Once or twice." Doc. 14-18.

While Fowler was completing his suspended imposition of sentence for the reckless driving conviction, he received a second underage consumption ticket at a friend's birthday party and recalls his PBT reading to have been ".09, .009 or whatever." Doc. 11 at ¶ 16: Doc. 16 at ¶ 16. On the night of that birthday party, Fowler had ridden to the party with friends and planned to get a ride home. Doc. 11 at ¶ 17; Doc. 16 at ¶ 17.

II.   **Standard of Review**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) places the burden initially on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Once the moving party has met that burden, the nonmoving party must establish

that a material fact is genuinely disputed either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Gacek, 666 F.3d at 1145. In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

III.   **Discussion**

South Dakota law governs the substantive issues in this diversity-of-citizenship-jurisdiction case. Bores v. Domino's Pizza, LLC, 530 F.3d 671, 674 (8th Cir. 2008) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Under South Dakota law, punitive damages are not recoverable unless expressly authorized by statute. SDCL § 21-1-4. The statute that authorizes punitive damages in tort actions is SDCL § 21-3-2, which provides:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

While SDCL § 21-3-2 limits its applicability to tort cases involving "oppression, fraud, or malice," the Supreme Court of South Dakota has stated that "[m]alice is an essential element of a claim for

4

punitive damages." Smizer v. Drey, 873 N.W.2d 697, 703 (S.D. 2016) (cleaned up and citation omitted); Dahl v. Sittner, 474 N.W.2d 897, 900 (S.D. 1991).

South Dakota law erects a procedural hurdle in SDCL § 21-1-4.1 before a claim for punitive damages can be presented to the jury.[1] Although not bound by procedural requirements of state law, this Court nonetheless must apply the stringent requirements of South Dakota statutory and case law on punitive damages in this diversity case. Ammann v. Massey-Ferguson, Ltd., 933 F. Supp. 840, 843 (D.S.D. 1996). Thus, this Court has previously required that for a punitive damages claim to survive a motion for summary judgment, the plaintiff must satisfy the standard in SDCL § 21-1-4.1 by showing by clear and convincing evidence that a reasonable basis exists upon which a jury could find the existence of malice. Straub v. Flevares, 4:13-CV-04120-KES, 2016 WL 1452363, at *2 (D.S.D. Apr. 13, 2016); Schrant v. Flevares, No. 4:12-CV-04180-KES, 2014 WL 7240090, at *2 (D.S.D. Dec. 19, 2014); Winterboer v. Edgewood Sioux Falls Senior Living, LLC, No. CIV. 12-4049-KES, 2014 WL 28863, at *2 (D.S.D. Jan. 2, 2014).

Malice under South Dakota law can be actual or presumed. Smizer, 873 N.W.2d at 703. Actual malice is "a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will toward that person." Dahl, 474 N.W.2d at 900. Espinoza does not contend that Fowler had any such actual malice, and there exists no evidence of actual malice here.

---

[1] SDCL § 21-1-4.1 states:
> In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against.

Presumed malice, on the other hand, does not mean action motivated by hatred or ill-will, but requires that an individual acts "willfully or wantonly to the injury of another." Id. The Supreme Court of South Dakota has clarified, however, that malice is not presumed from "simply the doing of an unlawful or injurious act." Id. (citation omitted). Rather, malice is presumed from acts that are "conceived in the spirit of mischief or of criminal indifference to civil obligations." Id. (citation omitted). "There must be facts that would show that defendant intentionally did something . . . [and] it can be said that he consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to the plaintiff." Berry v. Risdall, 576 N.W.2d 1, 9 (S.D. 1998) (citation omitted); Flockhart v. Wyant, 467 N.W.2d 473, 478 (S.D. 1991). Further, presumed malice is "conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong." Berry, 576 N.W.2d at 9 (citation omitted); Flockhart, 467 N.W.2d at 478. In other words, "[t]he conduct must be more than mere mistake, inadvertence, or inattention." Gabriel v. Bauman, 847 N.W.2d 537, 543 (S.D. 2014); see also Vilhauer v. Horsemens' Sports, Inc., 598 N.W.2d 525, 529 (S.D. 1999) (emphasizing that punitive damages cannot be recovered for mere negligence).

The Supreme Court of South Dakota has twice addressed whether and when drunk driving supports a punitive damages claim, see Berry, 576 N.W.2d 1; Flockhart, 467 N.W.2d 473, and on a third occasion addressed whether drunk driving satisfied the "willful and wanton misconduct" standard under the now-defunct guest statute that protected motorists from being sued by their passengers, Tranby v. Brodock, 348 N.W.2d 458 (S.D. 1984). The court has stated that "intoxication, by itself, does not establish the malice necessary to impose punitive damages." Berry, 576 N.W.2d at 9 (citing Flockhart, 467 N.W.2d at 478 n.7). Thus, the answer to the question

of whether drunk driving supports a punitive damages claim in South Dakota is that it depends on the circumstances involved.

Of the three South Dakota cases involving drunk driving, the most egregious facts are found in Flockhart, where the Supreme Court of South Dakota affirmed a $30,000 punitive damages award in a bifurcated trial. 467 N.W.2d at 474. In Flockhart, the defendant drank a six-pack of beer the night before the accident, resumed drinking "two or three beers" at a bar in Wall between 10:00 a.m. and 11:00 a.m. on the morning of the accident, and then began the 50-mile drive westward from Wall to Rapid City. Id. While driving to Rapid City, the defendant drank in her vehicle and then stopped to drink more alcohol at a bar in New Underwood fifteen miles east of Rapid City before getting back on Interstate 90, losing control of her vehicle, crossing through the median, and striking the plaintiff's pickup. Id. The defendant's blood alcohol content registered .30% after the accident. Id. She had five previous alcohol-related offenses, had been through alcohol treatment programs, and had been well educated on the dangers of drinking and driving. Id. at 474, 478. The court found "ample evidence to establish [defendant] Wyant's conduct was willful, wanton, and in reckless disregard of [plaintiff] Flockhart's rights (and that of every other motorist driving on I-90 that day)." Id. at 478. The behavior of the defendant in Flockhart was plainly worse than what Fowler did and has done.

Fowler's behavior is closer to what the Supreme Court of South Dakota addressed in Berry, 576 N.W.2d 1, a decision rendered seven years after Flockhart involving another intoxicated driver sued as a defendant after a motor vehicle accident. In Berry, the court affirmed a trial court's grant of a new trial after a jury verdict for the plaintiff, a passenger in a limousine that had turned in front of the defendant's car, which oddly awarded no damages despite the plaintiff suffering physical injuries to her neck, back and patella. Id. at 3. Part of what the court addressed in Berry

7

was whether the trial court erred in denying the defendant's motion to dismiss the punitive damages claim and in submitting the question of punitive damages. Id. at 9–10. In Berry, there was conflicting evidence whether the defendant's intoxication made any difference to the resulting accident, given that the limousine turned out in front of him. Id. at 3 n.1, 11 n.8. Evidence in the case established that the defendant habitually had "four" after-work drinks with fellow employees over a few hours before typically driving himself six to seven miles to his home in Rapid City. Id. at 9. On the day of the accident, the defendant had "four to nine drinks in less than two hours." Id. (footnote omitted). The court noted that his driving through a high-density area in Rapid City caused "a greater potential for an alcohol related injury." Id. at 10. The defendant's blood alcohol level was .122% two hours after the accident, suggesting that his blood alcohol level at the time of the accident likely was around .15%. Id. The defendant had prior alcohol-related run-ins with the law and underwent treatment and training on effects of alcohol on driving. Id. at 9 n.5, 10 n.7. The court in Berry concluded its analysis by writing:

> Today we do not adopt a bright line rule than any exact amount of alcohol consumption amounts to conduct sufficient to trigger [submission of a punitive damages claim]. Here the trial court heard the witnesses and was able to judge their demeanor and credibility in weighing the evidence on this issue. We cannot say that given all the facts, the trial court was clearly erroneous in its finding [submitting a punitive damages claim to the jury].

Id. at 10.

Fowler's conduct parallels that of the defendant in Berry in the drinking of alcohol over an hour or two, the overall blood alcohol content, the knowledge of the risks of drunk driving, and the decision to drive in a relatively high-density area (though driving in a rural area often involves higher speeds and greater risks concomitant therewith). Fowler had some prior and subsequent alcohol-related behaviors, but not to the extent of the defendant in Berry.

The final case where the Supreme Court of South Dakota has addressed whether drunk driving constitutes "willful and wanton misconduct" is the oldest of the three and arose under a now-defunct guest statute requiring a non-commercial passenger in a vehicle to prove "willful and wanton misconduct" to sue the driver of the vehicle. Tranby, 348 N.W.2d at 459–62. In Tranby, the court affirmed summary judgment, concluding that there was no genuine dispute of material fact that the driver's conduct was not willful and wanton. Id. at 459. The defendant and plaintiff-passenger in Tranby were best friends and high school juniors driving around and drinking beer during an evening in November 1975. Id. The defendant and plaintiff pooled money so that the plaintiff could buy two six-packs of beer as he looked older than the defendant. Id. After picking up a friend, they bought two more six-packs of beer, contributing equally to the purchase. Id. After drinking at a girlfriend's house, they were traveling on a rural gravel road with defendant driving. Id. at 460. Plaintiff looked at the speedometer, saw that it showed 60 miles per hour, and asked the defendant to "slow down a bit," after which the defendant lost control perhaps due to swerving to avoid a deer, resulting in plaintiff's injury claim. Id. at 460–61 (cleaned up). The Tranby decision lacks any mention of defendant's blood alcohol content or past alcohol-related record or knowledge of risk of drunk driving.

The court's recitation of facts focusing on the drinking behavior of both the defendant and the plaintiff passenger suggests that the court viewed the case under the guest statute, whose theory was to mistrust claims of injury from non-commercial passengers in a vehicle against the driver given the likely family or friend relationships. 8 Am. Jur. 2d Automobiles § 552 (May 2023 Update). The Tranby court's reasoning on whether defendant engaged in willful and wanton misconduct included:

> Plaintiff acknowledges that he had as much beer to drink as did
> defendant, that while he could feel the beer it did not affect him, that

9

> the beer did not appear to affect defendant's driving, that defendant had never exceeded 60 miles per hour previous to plaintiff's statement to defendant about going 60 miles per hour and to slow down a bit, and that there was no other complaint about his driving. The speed limit was 50 or 55 on an open, straight and fairly level road.

348 N.W.2d at 461.

The District of South Dakota previously has allowed a punitive damage claim under South Dakota law in a case where the defendant caused an accident while driving drunk. In companion cases against the same defendant involving the same conduct and accident, the court analogized the facts to Berry in allowing a punitive damages claim to survive summary judgment and refusing to bifurcate claims at trial. Schrant v. Flevares, 2014 WL 724009; see also Straub v. Flevares, 2016 WL 1452363. In the Flevares cases, the 76-year-old defendant had a routine of drinking with friends at the Yankton Elks Club, would drive himself home when he "felt in control," drank for approximately an hour and a half, caused an accident in the city of Yankton by turning in front of another vehicle on a busy street while going below the speed limit, and registered a blood alcohol level of .133% an hour and a half after the collision which likely meant his blood alcohol level was as high as .156% at the time of the accident. Straub, 2016 WL 1452363, at *1; Schrant, 2014 WL 724009, at *1, 6.

The ultimate question here is whether Fowler's conduct, when viewed in the light most favorable to the non-movant Espinoza, is something more than negligence and shows that "defendant intentionally did something in the operation of the motor vehicle which he should not have done or intentionally failed to do something which he should have done under the circumstances that it can be said that he consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce." Berry, 576 N.W.2d at 9 (quoting Tranby, 348 N.W.2d at 461). Or putting the question in terms

10

consistent with the procedural statute SDCL § 21-1-4.1, whether there exists clear and convincing evidence of a reasonable basis upon which a jury could find Fowler acted with presumed malice. See Schrant, 2014 WL 724009, at *6; Straub, 2016 WL 1452363, at *5. This Court recognizes that this is a close call here, but denies summary judgment and will entertain a pretrial motion to bifurcate as Fowler's post-accident drinking and possible other instances of driving with a "buzz" would be inadmissible on any issue of liability for the accident or actual damages sustained by Espinoza. Bifurcation also provides this Court the opportunity, as the Berry court had, to hear the testimony and see the witnesses before deciding as a final matter whether there is a submissible punitive damages claim here.

IV. **Conclusion**

For the reasons explained herein, it is

ORDERED that Defendant's Motion for Partial Summary Judgment on Punitive Damages, Doc. 10, is denied.

DATED this 12th day of September, 2023.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE